**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Zurich American Insurance Company,<br><br>Interpleader Plaintiff,<br>vs.<br><br>Trident Medical Center, LLC d/b/a Trident Medical Center; Tri-County Surgical Specialists, LLC; Integrated Regional Laboratories Pathology Services, LLC; Sulihat Lawal, individually and as mother for J.O.L. and J.O.A., minors; and the Estate of Abimbola Adeyemo, deceased.<br><br>Interpleader Defendants. | Civil Action No. 2:26-cv-03983-BHH<br><br>**VERIFIED COMPLAINT FOR INTERPLEADER** |

Interpleader Plaintiff Zurich American Insurance Company, by and through the undersigned counsel and pursuant to federal statutes 28 U.S.C. § 1335 and 28 U.S.C. § 2361 and, additionally and independently, pursuant to Fed. R. Civ. P. 22, hereby submits this Verified Complaint for Interpleader against Interpleader Defendants, and, as grounds in support thereof, states as follows:

## PARTIES

1. Plaintiff, Zurich American Insurance Company ("Zurich"), is an insurance company organized and existing under the laws of the State of New York, with its principal place of business in the State of Illinois. Zurich is, and at all relevant times was, authorized to transact business in the State of South Carolina. This Interpleader is focused on Zurich's Truckers Occupational Accident Insurance Policy # OCA 0145870-08 ("Zurich Policy") and the competing interests of the Interpleader Defendants in the benefit proceeds ("Policy Benefits") from the Zurich Policy.

2. Defendant Trident Medical Center, LLC d/b/a Trident Medical Center ("Trident Medical") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in South Carolina, and is authorized to do business in the State of South Carolina. Upon information and belief, no LLC member of Trident Medical is a citizen of the States of New York or Illinois. Trident Medical claims an interest in all of the remaining available Policy Benefits as a result of rendering medical services to Abimbola Adeyemo ("Mr. Adeyemo").

3. Defendant Tri-County Surgical Specialists, LLC ("Tri-County Surgical") is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business in South Carolina, and is authorized to do business in the State of South Carolina. Upon information and belief, no LLC member of Tri-County Surgical is a citizen of the States of New York or Illinois. Tri-County Surgical claims an interest in a portion of the remaining Policy Benefits as a result of rendering medical services to Mr. Adeyemo.

4. Defendant Integrated Regional Laboratories Pathology Services, LLC ("Integrated") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Tennessee, and is authorized to do business in the State of South Carolina. Upon information and belief, no LLC member of Integrated is a citizen of the States of New York or Illinois. Integrated claims an interest in a portion of the remaining Policy Benefits as a result of rendering medical services to Mr. Adeyemo.

5. Defendant Sulihat Lawal is, upon information and belief, a citizen and resident of the State of Texas ("Ms. Lawal"). Upon information and belief, Ms. Lawal is the mother of J.O.L. and J.O.A., minors, and was the "significant other"/girlfriend/fiance of the decedent Mr. Adeyemo. Ms. Lawal and Mr. Adeyemo are the biological parents of J.O.L. and J.O.A. Upon information

and belief, Mr. Adeyemo, Ms. Lawal and the two children lived in Mr. Adeyemo's residence in Indiana before his death; after his death, Ms. Lawal and the two children moved to Texas. It is anticipated Ms. Lawal, individually, claims an interest in all or a portion of the remaining available Policy Benefits as a result of being designated by Mr. Adeyemo as the beneficiary of the Zurich Policy. It is also anticipated that Ms. Lawal, as mother of and on behalf of the two minors J.O.L. and J.O.A., claims an interest for J.O.L. and J.O.A. as Mr. Adeyemo's only children in a portion of the remaining available Policy Benefits of the Zurich Policy as a result of the Survivor's Benefit provided under the Zurich Policy.

6. Defendant Estate of Abimbola Adeyemo has yet to be opened by an Indiana probate court because upon information and belief the Adeyemo family has failed to open an Estate and have a personal representative appointed by the probate court. Mr. Adeyemo was a citizen and resident of the State of Indiana at the time of his death. Assuming an Estate will be opened soon, the court-appointed personal representative of the Adeyemo Estate may claim an interest in a portion of the remaining available Policy Benefits as a result of the Temporary Total Disability Benefit provided under the Zurich Policy. Upon information and belief, the sole beneficiaries of the Adeyemo Estate under Indiana law, assuming Mr. Adeyemo had no Will and Last Testament, are his two minor children J.O.L. and J.O.A.

## JURISDICTION AND VENUE

7. This action is brought as an interpleader pursuant to federal statutes 28 U.S.C. § 1335 and 28 U.S.C. § 2361 and pursuant to Rule 22 of the Federal Rules of Civil Procedure.

8. Subject matter jurisdiction for this action is based on diversity of citizenship.

9. As to diversity of citizenship jurisdiction, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

between Zurich and Interpleader Defendants and the amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

10. Another basis for this Court's subject matter jurisdiction is 28 U.S.C. § 1335, which provides the Court with original jurisdiction over interpleader suits involving the claims of jurisdictionally-diverse parties to money or property valued at $500.00 or more. As shown herein, the amount in dispute in this case is alleged to be $838,944.29, and the requisite minimal diversity exists between two or more Interpleader Defendants pursuant to 28 U.S.C. § 1335. *See also State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530 (1967).

11. This Court has personal jurisdiction over Interpleader Defendants. This action arises out of events occurring within this District, including, without limitation, the motor vehicle accident involving Mr. Adeyemo, the medical services rendered to Mr. Adeyemo, the death of Mr. Adeyemo, and the Interpleader Defendants having competing claims of entitlement to the remaining available Policy Benefits which will be deposited into this Court's Registry as required by statute and as ordered by the Court. Additionally, pursuant to 28 U.S.C. § 2361, Zurich is permitted to serve Interpleader Defendants anywhere within the United States.

12. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1397 because at least one Interpleader Defendant resides in this judicial district and because this is the judicial district in which a substantial part of the events giving rise to the interpleader claim occurred.

## FACTUAL BACKGROUND

13. On June 24, 2025, Mr. Adeyemo was driving a tractor-trailer for work purposes on Interstate I-95 in Walterboro, South Carolina for the motor carrier Nice Guys, LLC ("Nice Guys"), when he had a one-vehicle accident ("Accident"), was severely injured and was transported to and hospitalized at Trident Medical at 9330 Medical Plaza Drive, North Charleston, South Carolina.

14. Trident Medical, Tri-County Surgical and Integrated rendered medical services to Mr. Adeyemo while he was hospitalized at Trident Medical as a result of the Accident. Counsel for Zurich was informed by Mr. Adeyemo's counsel Jerry Reardon that Railroad Crossing Healthcare, Inc. d/b/a Reserve Healthcare and Rehabilitation ("Reserve Healthcare") may have rendered hospice-type nursing/medical services after Mr. Adeyemo was discharged from Trident Medical.

15. Upon information and belief, Mr. Adeyemo was unconscious for all or nearly all of his one-year hospitalization/hospice stay.

16. Mr. Adeyemo passed away on June 9, 2026, as a result of the Accident. Attached hereto as **Exhibit A** is a true and accurate copy of a redacted version of Mr. Adeyemo's death certificate.

17. At all times relevant hereto, Mr. Adeyemo was a contract truck driver for Nice Guys and resided at 2145 Tobello Blvd, Indianapolis, Indiana 46234.

18. Nice Guys is based in Burr Ridge, Illinois and is and was an additional named insured on the Zurich Policy.

19. Zurich issued the Zurich Policy to policyholder Maybach International Group, LLC based in Elgin, Illinois. The combined single limit of the policy is $1,000,000. Nice Guys is also deemed a policyholder on the policy by virtue of being an additional named insured. Attached hereto as **Exhibit B** is a true and accurate copy of a redacted version of the Zurich Policy.

20. Mr. Adeyemo enrolled for coverage under the Zurich Policy and thereby became an insured person under the Zurich Policy by signing an Enrollment and Beneficiary Designation Form: Occupational Accident Insurance ("Enrollment Form"). The Enrollment Form is undated. Mr. Adeyemo noted on the form that he is a contract driver for Nice Guys. Mr. Adeyemo

identified Ms. Lawal on the form as his beneficiary of the Zurich Policy. Attached hereto as **Exhibit C** is a true and accurate copy of a redacted version of the Enrollment Form.

21. On or about September 4, 2025, attorney Jerry Reardon, on behalf of his client Mr. Adeyemo, submitted to Zurich an Occupational Accident Proof of Loss ("Proof of Loss") as part of Mr. Adeyemo's claim for benefits under the Zurich Policy as a result of the Accident. The Proof of Loss was signed by Mr. Reardon. (The document mistakenly listed Mr. Adeyemo as an "owner/operator" instead of a "contract driver" of Nice Guys.) Attached hereto as **Exhibit D** is a true and accurate copy of a redacted version of the Proof of Loss.

22. Subject to the policy limit of $1,000,000, Section V of the Zurich Policy provided the following benefits that are the subject of this interpleader action:

a. Accidental Dismemberment Benefit of $125,000, which was triggered due to dismemberment of a limb of Mr. Adeyemo while hospitalized at Trident Medical. Zurich paid this benefit of $125,000 to Mr. Adeyemo through his attorney Jerry Reardon on or about September 17, 2025.

b. Temporary Total Disability Benefit[1] of $500 per week, which was triggered after the 7-day waiting period. In periodic payments, Zurich paid this benefit [$500 x 29 weeks = $14,500] to Mr. Adeyemo through his attorney Mr. Reardon through January 20, 2026. As of yet, Zurich has not paid the remaining benefit through the date of Mr. Adeyemo's death (June 9, 2026) to the Adeyemo Estate.

c. Accidental Medical Expense Benefit of up to $1,000,000, which was commenced by helicopter transport of Mr. Adeyemo to Trident Medical by Med-Trans Corp. on the day of the Accident.

[1] As set forth herein above, this payment is not to be confused with "Temporary Total Disability Benefits" as defined by the South Carolina Workers' Compensation Act.

i. The Accidental Medical Expense Benefit provision of the Zurich Policy states, "If an **Insured Person** suffers an **Injury** requiring treatment by a **Physician** within the **Commencement Period**, the **Company** will pay the **Usual and Customary Charges** incurred for **Medically Necessary Services or Charges** received or incurred due to such **Injury**, up to the **Maximum Benefit Amount** and **Maximum Benefit Period** for all **Injuries** caused by a single **Accident**, subject to any applicable **Deductible Amount**."

ii. Section IX of the policy states, "The **Company** shall pay benefits directly to any **Hospital** or person rendering covered services, unless the **Insured Person** requests otherwise in writing and provides proof that payment was made directly to such **Hospital** or person. Such request must be made no later than the time Proof of Loss is filed. Any payment the **Company** makes in good faith fully discharges the **Company's** liability to the extent of the payment made." This provision is hereinafter referred to as the "Medical Services Payment Provision."

iii. Section IX of the policy also states, "Upon receipt of written proof of death, payment for loss of life of an **Insured Person** will be made to the **Insured Person's** beneficiary or, if there is no beneficiary designated, the **Insured Person's** survivors in the following order: 1. the **Insured Person's Spouse**; 2. the **Insured Person's** child(ren); 3. the **Insured Person's** parents; 4. the **Insured Person's** brothers and sisters; 5. the **Insured Person's** estate. Upon receipt of written Proof of Loss,

payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Insured Person**. If the **Insured Person** dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary or, if there is no beneficiary designated, the **Insured Person's** survivors in the order as listed above." The last sentence of this provision is hereinafter referred to as the "Dies Before All Payments Provision."

iv. Zurich has received medical billings from Med-Trans Corp., Tri-County Surgical, Trident Anesthesia Group, LLC ("Trident Anesthesia"), Trident Medical and Integrated. Zurich has paid $10,000 to Med-Trans Corp. (which is the sublimit in the Zurich Policy for such service), $7,257.98 to Tri-County Surgical, and $3,110.93 to Trident Anesthesia, but outstanding invoices of Tri-County Surgical, Trident Medical, and Integrated have not been paid yet. It is Zurich's position that because of the Medical Services Payment Provision, payments to these medical providers - Tri-County Surgical, Trident Medical, and Integrated should still be made to them even after Mr. Adeyemo's death. Otherwise, the policy beneficiary Ms. Lawal would receive a windfall under the Dies Before All Payments Provision. Zurich anticipates that Ms. Lawal likely disagrees with this position.

d. Accidental Death Benefit of $50,000, which was triggered when Mr. Adeyemo died on June 9, 2026. However, this benefit is subject to the following Limitation of Multiple Benefits Provision.

i. Section VII of the Zurich Policy states, "Limitation on Multiple Benefits. If an **Insured Person** can recover benefits under two or more of the Accidental Death Benefit, Accidental Dismemberment Benefit, Coma Benefit or the Accidental Paralysis Benefit as a result of the same **Accident**, the **Company** will pay only up to the highest applicable **Principal Sum**."

ii. Under this Limitation of Multiple Benefits Provision, the decedent or his estate and/or the beneficiary of the Zurich Policy only receives the greater of the Accidental Death Benefit of $50,000 or Accidental Dismemberment Benefit of $125,000 but not both sums. Zurich has already paid the Accidental Dismemberment Benefit of $125,000, and thus no policy benefit remains payable for the Accidental Death Benefit.

e. Survivor's Benefit of $200,000, which was triggered when Mr. Adeyemo died on June 9, 2026. As of yet, Zurich has not paid this benefit to a legal representative of Mr. Adeyemo's two minor children J.O.L. and J.O.A., who are, upon information and belief, the sole beneficiaries of the Survivor's Benefit. Specifically, Section V of the Zurich Policy states, "If the **Insured Person** is not survived by a **Spouse**, or if the **Insured Person's Spouse** dies or remarries, the **Company** will pay or continue to pay the Survivor's Benefit to the **Insured Person's** surviving **Dependent Child(ren)**, if any." J.O.L. and J.O.A., minors, meet the definition of **Dependent Child(ren)** under the Zurich Policy. Ms. Lawal was not the spouse of Mr. Adeyemo. Upon information and belief, Mr. Adeyemo is not survived by a spouse.

23. As of the filing of this Interpleader Complaint, Zurich has paid $20,368.91 for the Accidental Medical Expense Benefit, $125,000 for the Accidental Dismemberment Benefit, and $14,500 for the Temporary Total Disability Benefit. The remaining unpaid benefit on the policy is $838,944.29. Attached hereto as **Exhibit E** is a true and accurate copy of Zurich's Indemnity Paid Report and Total Medical Paid Report With Services Dates.

24. On November 6, 2025, Trident Medical filed a Verified Petition for Finding of Incapacity in the Probate Court of Charleston County, South Carolina, entitled *Trident Medical Center, LLC d/b/a Trident Medical Center v. Abimbola Adeyemo, alleged incapacitated person, and Ige S. Olumuylwa next of kin, and Luwal Sulihat,* Case No. 2025GC1000185.

25. As a result of the emergency hearing for the Petition on November 18, 2025, the Probate Court issued an Order Appointing Temporary Guardian (Jimmie Johnson) dated December 2, 2025 as well as an Order Appointing Temporary Conservator (Family Services, Inc. d/b/a Origin SC) dated December 2, 2025.

26. Upon information and belief, the authority of the Temporary Guardian and Temporary Conservator extinguished upon the death of Mr. Adeyemo.

27. In January 2026, Zurich received from Trident Medical a 196-page comprehensive printout of the medical charges from June 24, 2025 through December 4, 2025 in the total amount of $4,332,215.00. The printout also noted total adjustments of $3,519,743.27 and a balance of $812,471.73. In a July 31, 2026 email, counsel for Trident Medical advised Mr. Reardon and counsel for Zurich that Trident Medical "has outstanding charges of approximately $4.3 million."

28. In an email exchange on January 30, 2026, Zurich advised Mr. Adeyemo's attorney Mr. Reardon that it has "received the medical bill [from] Trident, as the medical bill is over 4 million dollars this will exhaust our policy. I am suspending all TTD payments at this time. We

need to address medical bills in the order they are received." Mr. Reardon emailed his response demanding that Zurich "not pay those bills from that policy. This money is also available to my clients [sic] family. There is no order from the court at this point to do anything. We are in conversations with all parties. The policy does not specify the order of payment. If the policies exhausted, they will file suit." Attached hereto as **Exhibit F** is a true and accurate copy of the email exchange. Mr. Adeyemo was still living when this email exchange occurred.

29. In letters to Trident Medical, Tri-County Surgical and Integrated dated January 30, 2026, Zurich notified these healthcare providers that their invoices cannot be processed at this time due to a pending investigation into the competing claims on the remaining benefits of the Zurich Policy.

30. Each of the Interpleader Defendants claims an interest in the remaining available Policy Benefits, and the respective claims are adverse and conflicting.

a. Notwithstanding the Limitation on Multiple Benefits Provision, Ms. Lawal may claim that the $50,000 Death Benefit is owed to her. Also notwithstanding the Medical Services Payment Provision, Ms. Lawal is anticipated to claim that she is entitled to all of the remaining available Policy Benefits as the policy's designated beneficiary because of the Dies Before All Payments Provision. ["If the **Insured Person** dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary or, if there is no beneficiary designated, the **Insured Person's** survivors in the order as listed above."]

b. Either Ms. Lawal as mother of J.O.L. and J.O.A., minors, or some other legal representative of J.O.L. and J.O.A. may claim the $200,000 Survivor's Benefit for the benefit of Mr. Adeyemo's two minor children J.O.L. and J.O.A.

c. Trident Medical, Tri-County Surgical, and Integrated claim that all their pending invoices be paid in accordance with the Accidental Medical Expense Benefit and the Medical Services Payment Provision.

d. Lastly, the Adeyemo Estate, once it is opened and has a personal representative, may claim the remaining Temporary Total Disability Benefit from January 20, 2026 until the date Mr. Adeyemo's death (approximately $9,500), although the Dies Before All Payments Provision indicates such benefit would instead be payable to Ms. Lawal.

e. The combined claims of these Interpleader Defendants far exceed the remaining available Policy Benefits. Ordinarily, such a situation is addressed by the following provision:

i. Section VII of the Zurich Policy states, "If either the **Combined Single Limit of Liability** or the **Aggregate Limit of Liability** is not enough to pay all **Covered Loss**, the **Company** will pay reduced benefit amounts based upon the proportion that the **Covered Loss** bears to each benefit or expected total benefits that would otherwise be payable. If the total benefits are unknown, the **Company** will determine the total expected benefits for each **Insured Person**." This provision is hereinafter referred to as the "Pro Rata Provision."

ii. Under this Pro Rata Provision, where there are multiple competing claims with insufficient policy limits, payments would be made pro rata based on the amount of each claimed loss to the remaining limits. However, because of the conflicting and adverse claims among the

Interpleader Defendants, the Pro Rata Provision cannot be applied with certainty.

31. In light of the foregoing, Zurich cannot safely determine without legal peril whether and how much to pay the remaining available Policy Benefits -- $838,944.29 and any applicable accrued interest -- to each of the Interpleader Defendants.

32. Upon information and belief, the Temporary Guardian and Temporary Conservator do not claim an interest in the remaining policy benefits.

33. Upon information and belief, Medicare has not made any payments for the medical care of Mr. Adeyemo as a result of the Accident, and thus, Medicare does not claim an interest in the remaining policy benefits. Zurich has learned from Medicaid (through the South Carolina Department of Health and Human Services) that Medicaid/SCDHHS is not claiming an interest in the remaining Policy Benefits. Zurich has also learned from Reserve Healthcare that it is not claiming an interest in the remaining Policy Benefits.

**COUNT ONE: INTERPLEADER**

34. Zurich incorporates by this reference each preceding paragraph as if fully set forth herein.

35. Zurich admits that in accordance with the terms of the Zurich Policy the remaining available Policy Benefits (i.e., Temporary Total Disability Benefit, Accidental Medical Expense Benefit, Accidental Death Benefit and Survivor's Benefit) are payable as a result of Mr. Adeyemo's Accident and subsequent death (although the Accidental Death Benefit may no longer be payable because of the Limitation on Multiple Benefits Provision). However, due to the issues described above, Zurich cannot safely determine without legal peril whether and how much to pay the remaining available Policy Benefits -- $838,944.29 and any applicable accrued interest – to

each of the Interpleader Defendants. The claims of the Interpleader Defendants are adverse and conflicting.

36. Zurich claims no beneficial interest in the remaining available Policy Benefits and disclaims any right to retain the benefits, and Zurich is instead a mere stakeholder. Zurich should be relieved of the risk of guessing which Interpleader Defendant should receive the remaining benefits of the Zurich Policy.

37. Unless the conflicting claims of the Interpleader Defendants are disposed of in this single proceeding, Zurich remains subject to multiple liability and litigation and faces substantial risk of suffering duplicate or inconsistent rulings on liability for payment of the remaining available Policy Benefits.

38. Zurich is ready, willing, and able to pay the remaining available Policy Benefits -- $838,944.29 and any applicable accrued interest -- into the Registry of the Court upon issuance of an order authorizing the deposit of said interpleader funds. Once the remaining benefits are deposited into the Registry of the Court, Zurich would no longer be exposed to multiple liability or litigation.

39. The Interpleader Defendants should be required to interplead and litigate or settle between themselves their rights and claims to the remaining available Policy Benefits payable under the Zurich Policy. The Adeyemo Estate should be required to interplead once it has been opened and a personal representative has been appointed by a court and service of process upon the personal representative has been obtained. If the Adeyemo Estate is not opened, the Court is empowered in equity and law to determine the rights of the other Interpleader Defendants in relation to the unclaimed interest of the Adeyemo Estate in the remaining Policy Benefits, and there is no reason to hold up this Interpleader action because one of the claimants is unable or

unwilling to perfect its claim. However, should the Court determine that the Dies Before All Payments Provision eliminates the interest of the Adeyemo Estate in the Temporary Total Disability Benefit (because payment for the benefit should only be made to Ms. Lawal), the Adeyemo Estate should not be required to interplead for the reason that it has no claim to any remaining available Policy Benefits.

40. Zurich is entitled to an order permanently enjoining the Interpleader Defendants, and anyone acting directly or indirectly on their behalf, from commencing or maintaining any action in any state or federal court against Zurich for the recovery of any claim, in whole or in part, against the Zurich Policy and/or the remaining available Policy Benefits.

41. Zurich should be discharged from this action as an innocent disinterested stakeholder.

**PRAYER FOR RELIEF**

WHEREFORE, Zurich respectfully requests that this Court enter a final judgment in its favor and against the Interpleader Defendants as follows:

1. That this interpleader action be allowed;

2. That the Zurich Policy's remaining available Policy Benefits -- $838,944.29 and any applicable accrued interest -- be accepted into the Registry of this Court and held in an interest-bearing account for future disbursement to Interpleader Defendants according to the judgment of this Court;

3. That the Interpleader Defendants be required to interplead and litigate or settle between themselves their rights to the remaining available Policy Benefits payable under the Zurich Policy;

4. That the Court adjudicate the issue of which Interpleader Defendants are rightfully entitled to the Zurich Policy's remaining available Policy Benefits and in what dollar amount;

5. That any party be allowed to join any additional defendant or defendants who may hereinafter be discovered to have a claim for said remaining available Policy Benefits;

6. That the Court enter an order permanently enjoining each of the Interpleader Defendants, their agents, attorneys, and/or assigns, and any other purported beneficiaries of the Zurich Policy, from instituting or maintaining any action in any court or forum against Zurich and its affiliated companies for the recovery of any claim, in whole or in part, against the Zurich Policy and/or the remaining available Policy Benefits;

7. That Zurich be dismissed *with prejudice* from this action and discharged from any and all further liability with respect to, affecting, or in any way arising out of the Zurich Policy with an express finding of finality; and

8. That Zurich be awarded such other and further relief as the Court may deem just, equitable and proper.

Respectfully submitted,

**MAYNARD NEXSEN, P.C.**

By: /s/ M. Elizabeth Jowers
M. Elizabeth Jowers (Fed. ID No. 7752)
205 Kings Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1724
Facsimile: 843.720.1777
Email: bjowers@maynardnexsen.com

*Attorney for Interpleader Plaintiff*
*Zurich American Insurance Company*

September 9, 2026
Charleston, South Carolina

**VERIFICATION**

Tom Wojciechowski, being first duly sworn, deposes and says:

1. That I am an accident & health team claims manager for Zurich American Insurance Company ("Zurich") and as such I am duly authorized to verify the foregoing Complaint for Interpleader.

2. That I have read the foregoing Complaint for Interpleader and know the contents thereof; that the same is true of my own knowledge, information, and/or belief, some of which is based on records regularly kept in the course of Zurich's business or based on the knowledge and information of other officers, agents, and employees and/or former employees of Zurich.

I hereby declare and affirm, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

This the 9th day of September, 2026.

/s/ Tom Wojciechowski
Tom Wojciechowski